**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

PETER LUNDSTEDT,
*Plaintiff*,

v.                                             No. 3:15-cv-00824 (JAM)

I.C. SYSTEM, INC.,
*Defendant*.

### RULING ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Peter Lundstedt's phone would not stop ringing. It was a debt collector—defendant I.C. System, Inc.—who kept calling. Defendant called plaintiff's home telephone some 29 times over the course of 24 days, all in hopes of collecting on a paltry sum that plaintiff owed his telephone company.

Now it is plaintiff who hopes to collect from defendant. He has filed this lawsuit claiming that defendant's numerous calls violated his rights under multiple statutes and the common law. Defendant moves for judgment on the pleadings.

I conclude that plaintiff has alleged a valid claim for relief under the Fair Debt Collection Practices Act because he has alleged facts that plausibly show defendant's intent to annoy, harass, and abuse him by calling him so many times. But the rest of plaintiff's claims are lacking. The Telephone Consumer Protection Act does not prohibit the use of an automatic dialing system to call plaintiff's home telephone. The Connecticut Unfair Trade Practices Act does not apply because plaintiff did not suffer an ascertainable loss of money or property. A Connecticut law that regulates telephone solicitation (Conn. Gen. Stat. § 42-288a) does not apply to debt collection calls. And although the many phone calls to plaintiff were bothersome, no facts plausibly suggest that plaintiff suffered a foreseeable illness or injury that would allow him to

1

maintain a claim for negligent infliction of emotional distress. Accordingly, I will grant in part and deny in part defendant's motion for judgment on the pleadings.

## BACKGROUND

Plaintiff claims that defendant placed 29 telephone calls using an automatic dialing system to his home between February 16 and March 11, 2015. These calls were allegedly made to collect a debt owed by plaintiff to Verizon for about $160. According to plaintiff, he told defendant on the first call that he was disputing the debt, to take him off its call list, and to stop calling him because it was injurious to plaintiff. Plaintiff's phone number had been registered as well to the national "Do Not Call" registry. Plaintiff claims that defendant's repeated calls caused him "serious terrorizing emotional distress," and defendant's "terrorizing tortuous acts caused" plaintiff distress "because [he] had been called hundreds if not thousands of times by other debt collectors." Doc. #1-1 at 9 (¶ 17).

Plaintiff filed a *pro se* complaint against defendant in Connecticut Superior Court. Defendant filed a notice of removal to this Court, and defendant has now moved pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings.

## DISCUSSION

The standard for reviewing a motion for judgment on the pleadings pursuant to Rule 12(c) is identical to that for a motion to dismiss under Rule 12(b)(6). *See D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 99 (2d Cir. 2001). The Court must accept as true all factual matters alleged in a complaint, and the allegations of a *pro se* complaint must be read liberally to raise the strongest arguments that it suggests. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of federal court complaints. A complaint must allege

enough facts—as distinct from hyperbole or legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *The Fair Debt Collection Practices Act*

A fair reading of the complaint is that plaintiff claims a violation of the federal Fair Debt Collection Practices Act (FDCPA). The relevant provision of the FDCPA provides that "a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The statute lists a specific example of conduct that violates this prohibition: "Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).

Defendant counters that the FDCPA does not apply for three reasons. First, defendant argues that the FDCPA defines a "debt" to mean a "consumer" debt, *see* 15 U.S.C. § 1692a(5), and plaintiff has failed to plead that the debt at issue is a consumer debt. I do not agree that this alleged deficiency defeats plaintiff's claim at the pleading stage in view that the calls at issue were made to plaintiff's home and in light of plaintiff's allegation that he is a disabled veteran. It is therefore more plausible that any account plaintiff had with Verizon would have been a consumer account than a business account. The facts suffice for a plausible inference that the debt was a consumer debt.

Second, defendant argues that plaintiff did not make a written request to leave him alone, consistent with a provision of the FDCPA that requires a debt collector to cease all

communication with any consumer who timely disputes a debt in writing. *See* 15 U.S.C. § 1692g(b). This argument is specious. Apart from the extra protection for a consumer that § 1692g(b) affords for a consumer who lodges a dispute in writing, nothing in the text of § 1692d suggests that a debt collector is at liberty to annoy and harass a debtor for so long as the debtor may fail to dispute a debt in writing

Third, defendant argues that the alleged pattern of calls—29 calls over a period of 24 days—is legally insufficient to show an intent to annoy, abuse, or harass plaintiff as the statute requires. This seems like a lot of calls to me, and I cannot agree that the pattern is so insubstantial that it fails as a matter of law. Contrary to defendant's assertion that "no calls were made continuously on the same day" Doc. #20 at 13, the call log attached to the complaint shows multiple days when more than one call was made: three calls on February 17, 2015, four calls on February 26, two calls on February 28, three calls on March 2, and then two calls each on March 3, 4, 6, 9, 10, and 11. Doc. #1-1 at 26. Even though the calls did not occur at odd hours and there are no allegations of any abusive comments made by defendant during these calls, it is far from implausible to conclude on the basis of the frequency and pattern of calls that plaintiff could prove an intent to annoy, abuse, or harass. *See, e.g.*, *Sanchez v. Client Services, Inc.*, 520 F. Supp. 2d 1149, 1160-61 (N.D. Cal. 2007) (granting summary judgment *for plaintiff* where defendant made 54 calls over a span of six months); *Kloth-Zanard v. Bank of America*, 2016 WL 287020, at *3 (D. Conn. 2016) (104 telephone calls over 15 months sufficed for a harassment claim under § 1692d); *see also Allen v. Bank of Am., N.A.,* 2012 WL 5412654, at *8 (N.D. Ill. 2012) (discussing standards to evaluate a § 1692d claim on the basis of volume and pattern of calls and whether a plaintiff has asked the collection agency to stop). There is enough here for the complaint to survive the pleading stage.

Defendant misplaces its reliance on *Chavious v. CBE Group, Inc.*, 2012 WL 113509 (E.D.N.Y. 2012), because that case involved repeated calls to a consumer who—unlike plaintiff in this case—could not be reached or had not told the debt collector to stop calling. *Id.* at *2-3. Moreover, as *Chavious* itself notes, "the caller's intent is often a jury question," *id.* at 2, and it would certainly not be appropriate for me at the initial pleading stage to conclude that plaintiff's allegations of 29 calls over a period of 24 days is insufficient as a matter of law.

Plaintiff has alleged enough facts to state plausible grounds from relief for his claim of annoyance, harassment, and abuse under 15 U.S.C. § 1692d. Accordingly, I will deny defendant's motion for judgment on the pleadings with respect to plaintiff's FDCPA claim.

### The Telephone Consumer Protection Act

Congress passed the Telephone Consumer Protection Act (TCPA) to protect consumers from certain types of unwanted telephone communications. *See Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 55 (2d Cir. 2017). As relevant to this action, the TCPA makes it unlawful to use either an automatic telephone dialing system or an artificial or prerecorded voice to call a cellphone or to call any telephone service for which the consumer is charged for receiving the call. *See* 47 U.S.C. § 227(b)(1)(A)(iii).[1] In addition, the TCPA separately prohibits the initiation

---

[1] 47 U.S.C. § 227(b)(1)(A) provides in relevant part:
It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
    **(A)** to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--
        **(i)** to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);
        **(ii)** to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or
        **(iii)** to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

of a telephone call to any residential line using an artificial or prerecorded voice message. *See* 47 U.S.C. § 227(b)(1)(B).[2]

Defendant argues that the types of telephone calls alleged by plaintiff in the complaint are not subject to any prohibition under the TCPA. According to the complaint, defendant "called the Plaintiff at his residence," and "use[d] an automatic dialing system … to communicate with Plaintiff." Doc. #1-1 at 6 (¶ 2), 11 (¶ 26)). There is no allegation that defendant called plaintiff on his cellphone.

Plaintiff argues that the TCPA applies because he received calls by means of a wireless Internet network in his home. Doc. #21 at 10. But there is no support in the text of the TCPA for plaintiff's argument that a call received using a wireless Internet communication is the same as a call made to his cellphone.

It is true that § 227(b)(1)(A)(iii) also extends to telephone calls that are made to "any service for which the called party is charged for the call." But plaintiff does not allege that any Internet-based system that he may have used at his home resulted in a charge to him for each call that he received from defendant. *See Klein v. Commerce Energy, Inc.*, 2017 WL 2672290, at *10-13 (W.D. Pa. 2017) (§ 227(b)(1)(A)(iii) does not apply to automatic dialing system calls made to someone who received calls via Voice-over-Internet Protocol system absent evidence that the called party was charged for the call).

---

[2] 47 U.S.C. § 227(b)(1)(B) provides in relevant part:
It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B).

Moreover, to the extent that plaintiff contends that the TCPA applies here merely because the calls were made to his residence, this argument also fails, because it ignores the text of the statute that places no such limitation on the use of an automatic dialing system to place calls to a residence. Section 227(b)(1)(A) does not refer at all to calls that are made to a residence. Although the next subsection of the statute—§ 227(b)(1)(B)—specifically applies to telephone calls that are made to a residence, its scope is limited only to the use of telephone calls made by means of a prerecorded voice message, as distinct from telephone calls made by use of an automated dialing system. Plaintiff has not alleged that defendant used a prerecorded voice message to call him at his home.

It is true that the legislative history suggests the general intent of Congress to protect the privacy rights of residential telephone customers. *See Bonime v. Avaya, Inc.*, 547 F.3d 497, 499 (2d Cir. 2008). But legislative history cannot trump the clear words of a statute. *See Fed. Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136, 141 (2d Cir. 2013). The clear words of the TCPA do not extend to the use of an automatic dialing system (as distinct from the use of a prerecorded voice message) to place a telephone call to a residence. Accordingly, I will dismiss plaintiff's TCPA claim.[3]

### *Conn. Gen. Stat. § 42-288a*

Plaintiff alleges that defendant violated Conn. Gen. Stat. § 42-288a(c), a Connecticut statute prohibiting any "unsolicited telephonic sales call to any consumer" that meets certain criteria (*e.g.*, that the consumer's telephone number is listed on the state's Do Not Call registry).

---

[3] The TCPA authorizes the Federal Communications Commission to make regulations to implement its requirements. *See* 47 U.S.C. § 227(b)(2). The parties do not suggest that there are any regulations that are relevant to this Court's ruling.

The statute further provides that a violation shall be deemed an unfair trade practice. *See* Conn. Gen. Stat. § 42-288a(g).

Defendant argues that any claim under § 42-288a(c) fails because the statute defines the term "unsolicited telephonic sales call" in a manner that excludes calls made "in connection with an existing debt or contract." *See* Conn. Gen. Stat. § 42-288a(a)(11).[4] I agree.

Plaintiff argues, however, that the statute also excludes two more categories of calls from the definition of "unsolicited telephonic sales calls," namely calls made "pursuant to the prior express written consent of the consumer," § 42-288a(a)(11)(A), and calls made "to an existing customer," § 42-288a(a)(11)(C). According to plaintiff, because neither of these two additional exclusions apply to him, then this must mean that the first exclusion (for debt collection calls) also does not apply to him.

This argument defies logic and grammar. The three exclusions listed in § 42-288a(a)(11) are disjunctive. That is to say, a call does not qualify as an "unsolicited telephonic sales call" if it answers to any *one* of the three exclusions described in subsections (A), (B), and (C) of § 42-288a(a)(11). Because the complaint plainly alleges debt collection calls that are not within the scope of the statute, I will dismiss plaintiff's claim under § 42-288a.[5]

---

[4] Conn. Gen. Stat. § 42-288a(a)(11) defines the term "unsolicited telephonic sales call," and it provides in full as follows:

(11) "Unsolicited telephonic sales call" means any telephonic sales call other than a telephonic sales call made: (A) Pursuant to the prior express written consent of the consumer who is called or sent a text or media message; (B) primarily in connection with an existing debt or contract, payment or performance of which has not been completed at the time of the telephonic sales call; or (C) to an existing customer, unless such customer has stated to the telephone solicitor that such customer no longer wishes to receive the telephonic sales calls of such telephone solicitor.

[5] Beyond identifying a violation of § 42-288a as an unfair trade practice within the meaning of the Connecticut Unfair Trade Practices Act (CUTPA), the statute does not expressly create a judicially enforceable cause of action. Because I will dismiss plaintiff's claim on the merits under § 42-288a, I need not consider the doubtful proposition that § 42-288a creates an implied or private right of action independent of any CUTPA claim. *See Gerardi v. City of Bridgeport*, 294 Conn. 461, 468-69 (2010).

### Connecticut Unfair Trade Practices Act (CUTPA)

Plaintiff alleges that defendant's repeated debt collection calls violated the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110b. CUTPA of course prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

Defendant argues that plaintiff has not alleged an "ascertainable loss of money or property" as is required to sustain a CUTPA claim. *See* Conn. Gen. Stat. § 42-110g(a). I agree. Because plaintiff has alleged only that he sustained emotional injury from being subject to many debt collection calls, he has not alleged facts that plausibly show that he sustained an ascertainable loss. *See Larobina v. Wells Fargo Bank, N.A.*, 632 F. App'x 55, 56-57 (2d Cir. 2016) (affirming dismissal of CUTPA claim because plaintiff did not show "ascertainable loss" based on emotional distress from debt collection calls). Therefore, his claim under CUTPA must be dismissed.

### Negligent Infliction of Emotional Distress

To establish negligent infliction of emotional distress, a plaintiff must show that "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Packer v. SN Servicing Corp.*, 2008 WL 359411, at *12 (D. Conn. 2008); *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003).

Even in light of plaintiff's hyperbolic claims that he was "terrorized" by the numerous calls from defendant, he has not alleged facts that make it plausible to conclude that any distress might result in illness or bodily harm, much less that such illness or injury was foreseeable to defendant. *See Stancuna v. Schaffer*, 122 Conn. App. 484, 490 (2010) (noting that "the

foreseeability requirement in a negligent infliction of emotional distress claim is more specific than the standard negligence requirement that an actor should have foreseen that his tortious conduct was likely to cause harm" and that "in order to state a claim for negligent infliction of emotional distress, the plaintiff must plead that the actor should have foreseen that her behavior would likely cause harm of a specific nature, *i.e.*, emotional distress likely to lead to illness or bodily harm"). Nor does plaintiff detail the contents of any of the calls made by defendant, and the call log reflects that the vast majority of calls were of minimal duration. Plaintiff has not alleged facts to plausibly support a claim for negligent infliction of emotional distress.[6]

### CONCLUSION

For the reasons set forth above, defendant's motion for judgment on the pleadings (Doc. #18) is GRANTED in part and DENIED in part. The motion is DENIED with respect to plaintiff's claim under the Fair Debt Collection Practices Act (FDCPA). The motion is GRANTED with respect to plaintiff's claims under the Telephone Consumer Protection Act (TCPA), the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-288a, and under the common law for negligent infliction of emotional distress.

It is so ordered.

Dated at New Haven this 26th day of September 2017.


/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[6] This conclusion is not inconsistent with my ruling in another case involving plaintiff that involved far more phone calls and far more detailed allegations to support his claim of distress. *See Lundstedt v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 3101999, at *13 (D. Conn. 2016).